UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16 CR 32 JAR (ACL) |
| | ) |
| OSCAR DOMINGUEZ-CHAIDEZ, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Pending before the undersigned is Defendant Oscar Dominguez-Chaidez' Motion to Suppress (Docs. 23 and 26) evidence and statements that were obtained on March 29 and 30, 2015.

Chaidez requests that the Court suppress any and all statements made by him to law enforcement officers, as well as any physical evidence seized, including a firearm. Chaidez claims that the "statements were obtained in violation of his rights under the Fifth and Sixth Amendments to the Constitution of the United States and procedures guaranteed by *Miranda v. Arizona* and its progeny." (Doc. 23 at 1; Doc. 26 at 1.) As to any physical evidence seized, Chaidez alleges it was seized "without a warrant, probable cause, consent, or other excuse and was from an area in which he had a reasonable expectation of privacy. *Id*. Chaidez claims "[t]here was no credible evidence to believe [ ] Chaidez' constitutional rights were not violated by searching his vehicle without

consent, or that any other warrantless search exception applied." (Doc. 32 at 1.) Chaidez failed to identify any supporting facts from the record to support his contention.

The Government filed a detailed Brief in opposition to the Motion. (Doc. 25.) The Government asserts that the statements Chaidez made to law enforcement officers were voluntary. Alternatively, the Government argues that Officer Blagg's question to Chaidez regarding whether he had a firearm was permitted under the "public safety" exception to the *Miranda* rule. Finally, the Government argues that the firearm in this case was seized based on Chaidez' voluntary consent to the search of his truck, thus any evidence seized during the scope of that search, including the firearm, should be admissible at trial. As an alternative argument, the Government asserts that in the absence of consent and based on the facts and circumstances of the case, Officer Blagg could have conducted a warrantless search of the truck under the automobile exception to the warrant requirement.

An evidentiary hearing was held on June 14, 2016. Two Caruthersville Police Department Officers testified at the hearing, Officer Chris Blagg and Officer Paul Meacham. Both officers were cross-examined extensively by defense counsel.

Based on all the pleadings, the testimony and evidence adduced at the hearing and having had the opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that the Motion to Suppress be denied.

## I. Findings of Fact

On March 29, 2016, around 1:16 p.m., Officer Blagg of the Caruthersville Police Department was on duty and dispatched to 411 Taven Apartments for a *report of a domestic disturbance involving a man armed with a gun.* Three adult bystanders in front of the apartment indicated they had observed a man waving a firearm while standing in the open doorway of Apartment 411 and that a woman was inside the apartment when the man was waving the firearm. When Officer Blagg spoke to the bystanders, the door to Apartment 411 was closed. He knocked on the door. As he did so, he had his gun drawn at his side. Kathy Schoolcraft answered the door and Chaidez was observed standing inside the apartment along with three children. Officer Blagg had prior experience responding to domestic calls involving Schoolcraft and other men.

Based on the nature of the call and the statements of the bystanders, Officer Blagg was concerned for the safety of the public and his own safety. He asked Chaidez and Schoolcraft if anyone had a weapon. Schoolcraft invited Officer Blagg in the apartment and explained that she and Chaidez had a verbal altercation. Officer Blagg conducted a pat down search of Chaidez and did not find any weapons on his person. Chaidez indicated that he did not have a weapon on his person rather it was in his truck. Chaidez volunteered to get the gun for Officer Blagg; he went outside to his truck which was parked right in front of the apartment.

Officer Blagg followed Chaidez to the truck. After Chaidez opened the truck door he started to reach inside to recover the firearm. At that point, Officer Blagg asked Chaidez to please allow him to retrieve it. Officer Blagg was still concerned for his

safety and the safety of others.  Chaidez backed away from the truck and told Officer Blagg that the firearm was in the console of the truck in a bag.  Officer Blagg found the bag in the console; it contained a .45 caliber handgun.  Officer Blagg seized the firearm due to the nature of the incident and the fact it could be evidence of a crime.

After Officer Blagg recovered the handgun, Chaidez told Officer Blagg that he was nervous because he is not a U.S. citizen and he did not know if he was allowed to possess the firearm.  Officer Blagg replied that he was not familiar with immigration laws and would have to check on it.  The information related to Chaidez' citizenship was volunteered and not in response to any question asked by Officer Blagg.

The pair returned to the apartment and Schoolcraft was sitting on the couch.  Officer Blagg asked Schoolcraft if Chaidez had pulled a gun on her and Schoolcraft stated that the altercation was only verbal.  She indicated the fight was over her infidelity while Chaidez was away.  Officer Blagg advised the couple of Missouri's 12-hour Rule that applies in domestic situations and requires couples who are involved in domestic disputes to be apart for at least twelve hours as a "cool down" period.  Chaidez volunteered to be the person to leave.  Both Chaidez and Officer Blagg left the apartment.

After leaving the apartment, Officer Blagg returned to the police department.  Chaidez followed him there.  The men smoked cigarettes together at the police department.  Chaidez wanted to know when he would be able to pick up his gun and he made other incriminating statements.  Officer Blagg reiterated that he would have to do some checking before he would be able to return the gun to Chaidez.

The next day, Chaidez returned to the police department and approached Officer Paul Meacham about whether the gun would be returned to him. Chaidez again made incriminating statements. Officer Meacham explained that he would have to do some checking before the firearm could be returned. Officer Meacham asked Chaidez to leave his phone number so that he could call Chaidez when more information was available.

Officer Meacham communicated with officers from the Bureau of Alcohol, Tobacco, and Firearms, as well as Immigration and Customs Enforcement. He learned that it was unlawful for an illegal alien such as Chaidez to possess the firearm. During the first couple weeks of April, 2015, Officer Meacham had approximately six phone conversations with Chaidez. Chaidez initiated all of the calls except the first one, which Officer Meacham made to advise Chaidez the firearm could not be returned to him. During a number of the calls Chaidez asked whether he should hire a lawyer. Officer Meacham told Chaidez that he was not allowed to give him legal advice and that Chaidez would have to make that decision himself.

The testimony of both officers was informative and forthright. Both were subjected to cross-examination by defense counsel. The undersigned finds that the testimony of the officers--regarding the circumstances under which Chaidez volunteered to show Officer Blagg the location of the firearm, as well as the other statements Chaidez made to both officers--was consistent and credible.

Chaidez now moves to suppress all of his statements and the firearm that was seized from his truck.

## II. Conclusions of Law

### II.A. The Defendant's statements are admissible at trial

As previously stated, Chaidez claims that his "statements were obtained in violation of his rights under the Fifth and Sixth Amendments to the Constitution of the United States and procedures guaranteed by *Miranda v. Arizona* and its progeny." (Doc. 23 at 1; Doc. 24 at 1.)

### II.A.i. The Defendant's statements were voluntary

"[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question." *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). "The protections of *Miranda* apply to custodial interrogations." *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007) (citations omitted).

The question of whether a suspect is "in custody" and entitled to receive the *Miranda* warning is answered by examining whether there was a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest"? *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Mathiason*, 429 U.S. at 495. *See also United States v. Black Bear*, 422 F.3d 658, 661 (8th Cir. 2005). Additionally, "[w]arnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" *Beheler*, 463 U.S. at 1125. Instead, a determination whether a suspect is "in custody" focuses on the "totality of the circumstances" confronting the defendant at the time of the questioning, and consideration of "whether a reasonable person in [the suspect's] position would

consider his 'freedom of movement restricted to the degree associated with formal arrest.'" *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007), citing *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004). In addressing the question of whether a reasonable person would consider "their freedom of movement restricted to the degree associated with formal arrest," the focus is "on the objective circumstances, not [the] subjective views of the participants." *Black Bear*, 422 F.3d at 661 (citations omitted).

Those circumstances were examined in *United States v. Griffin,* 922 F.2d 1343 (8th Cir. 1990). In that case, the Eighth Circuit delineated six "common indicia of custody" to be considered when determining whether a suspect is in custody while being questioned. The factors indicating custody include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin,* 922 F.2d at 1349. "These factors, however, are not exclusive, and custody 'cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly.'" *Czichray*, 378 F.3d at 826. The undersigned will examine each of these factors.

**(1) What advice was given by the officers regarding the suspect's freedoms?**

Officer Blagg did not advise Chaidez that he was not under arrest, that he did not need to answer questions, or that he was free to leave. The circumstances forced Officer Blagg to question Chaidez regarding whether a firearm was present in order to remove the danger posed by a firearm that was reportedly involved in a domestic situation.

Likewise, Officer Meacham did not offer any such advice when Chaidez voluntarily went to the police department to see if he could retrieve his firearm, or when the two communicated on the telephone.

**(2) Were there any restrictions on the suspect's movement?**

When Officer Blagg questioned Chaidez about whether or not Chaidez had a weapon, Officer Blagg did not restrain Chaidez' freedom of movement other than a brief pat down for safety to insure Chaidez did not have a weapon on his person. Chaidez had "unrestrained freedom of movement" as he led Officer Blagg to his truck where the firearm was located. Although Officer Blagg asked for Chaidez to allow him to secure the firearm, Chaidez was free to move about in whatever way he pleased. In fact, after Officer Blagg advised Chaidez and his wife of the "12 hour rule," Chaidez voluntarily followed Officer Blagg to the police department and smoked a cigarette with him. This interaction was more like a social meeting than any sort of controlled interrogation.

Nor did Officer Meacham restrain Chaidez' freedom of movement during his single, in person encounter with Chaidez. The remainder of Officer Meacham's communications with Chaidez were on the telephone; no restraints were made on Chaidez' movements during those interactions.

**(3)    Who initiated the contact and was there voluntary acquiescence to official requests?**

The circumstances of this case make clear that Officer Blagg initiated contact with Chaidez in response to the domestic disturbance that had been reported. While the encounter was initiated by the officer, however, Chaidez not only "voluntarily acquiesced to official requests," he volunteered to show the officer where the firearm was located.

Most of Chaidez' contacts with Officer Meacham, on the other hand, were initiated by Chaidez. The first encounter occurred because Chaidez voluntarily appeared at the police station to see if it was possible to recover his firearm. The second contact was initiated by Officer Meacham, however, it was made in response to Chaidez' inquiry about whether the firearm would be returned. The remainder of the phone calls were initiated by Chaidez.

**(4)    Were strong arm tactics used?**

Officer Blagg did not utilize any strong arm tactics to diffuse the dangerous situation posed by the domestic disturbance he went to investigate at Apartment 411. He posed a question about the report of a disturbance in a matter of fact manner and engaged in a conversation with the parties who were believed to be involved. Officer Blagg was a single officer and had no back up. Although he did draw his firearm when he first approached Apartment 411, that was only for a brief moment and he did not otherwise use his firearm during the interaction.

There was no evidence that Officer Meacham used any strong arm tactics whatsoever.

**(5)     Was the atmosphere of the interview police dominated?**

The discussion above reveals no indicia that the atmosphere during Chaidez' interactions with the officers was police dominated.  Officer Blagg was the sole officer on the scene.  Chaidez felt so comfortable with Officer Blagg that he shared more than the location of his firearm—he also shared that he was an illegal alien and was nervous about whether or not he could lawfully possess the firearm.  In the apparent conversational nature of the interaction, Officer Blagg responded that he wasn't familiar with the immigration laws and that he would have to raise the question with other authorities.  Officer Blagg testified that Chaidez was very cooperative during the entire interaction.  Furthermore, Chaidez followed Officer Blagg to the police station to ask more questions.

Similarly, Officer Meacham's interaction with Chaidez was not police dominated as most of the communications were initiated by Chaidez and Officer Meacham was simply responding to Chaidez' inquiries.

**(6)     Was the suspect placed under arrest when the questioning ceased?**

Chaidez was not placed under arrest after Officer Blagg recovered the firearm.  Instead he and Officer Blagg returned to the apartment to talk with Chaidez' wife.  There was discussion about the 12-hour rule's required cool down period and Chaidez volunteered to leave.  When Chaidez left, he had the option to go wherever he wanted.  Instead of leaving the area, Chaidez followed Officer Blagg to the police department to ask him more questions about when he might be able to recover his firearm.

Likewise, Officer Meacham never placed Chaidez under arrest following any of his communications with Chaidez.

In light of the aforementioned analysis of the totality of the circumstances, the evidence supports that the entirety of the interactions between Chaidez and the officers was non-custodial in nature. The undersigned finds that Chaidez voluntarily made statements to Officer Blagg and Officer Meacham; and Chaidez volunteered to show Officer Blagg where his firearm was located. As a result, the Motion to Suppress should be denied.

**II.A.ii.    The Defendant's statements regarding the location of the firearm are also admissible under the "public safety" exception to the *Miranda* rule.**

The Supreme Court of the United States carved out a "public safety" exception to the requirement of *Miranda* warnings when the questions asked by law enforcement officers are "reasonably prompted by a concern for the public safety." *New York v. Quarles*, 467 U.S. 649, 655-56 (1984). In *Quarles*, a man accused of armed rape ran into a supermarket where he was arrested wearing an empty holster. Before the *Miranda* warnings were read to him, the police asked him where the gun was, and he told them. The Court concluded that the defendant's unwarned statement should not be suppressed, holding that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rules protecting the Fifth Amendment's privilege against self-incrimination." *Id*. at 657. *See also, United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir. 1992) (applying the public safety exception to an unwarned

statement given by a man detained after a police officer learned during a routine traffic stop that he had several outstanding felony warrants; after the man told the police officer that he had discarded a gun while running from the police, the officer asked, without giving any *Miranda* warnings, where the gun was, the man told him, and the gun was seized; the officer had not known that a gun was involved until the man volunteered that he had discarded one); *United States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991) (applying the public safety exception to the seizure of a gun, the location of which was revealed in answer to police officers' inquiry about its location after the police officers had stopped and frisked a suspect and found a controlled substance and a loaded magazine; the officers' inquiry was made before any *Miranda* warnings were given).

In this case, Officer Blagg asked Chaidez and Schoolcraft if anyone had a weapon. This question was generally targeted at a safety concern based on the report of a domestic disturbance involving a man armed with a gun. Additionally, Officer Blagg received eyewitness accounts that a man was waving a firearm while standing in the open doorway of the apartment while a woman was inside. Officer Blagg's questions regarding the presence of a weapon were "reasonably prompted by a concern for the public safety." *Quarles*, 467 U.S. at 655-56. Officer Blagg was justified in questioning Chaidez in an effort to locate the gun to eliminate the perceived danger to himself and to the public. *See United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir.1989).

Officer Blagg's immediate concern was to ascertain the whereabouts of the gun. A pat down search revealed that Chaidez did not have a weapon on his person. When asked about the presence of a firearm, Chaidez indicated that he did not have a weapon

on his person rather it was in his truck. The truck was parked right in front of the apartment. Until the firearm was secured, it posed a threat to both public safety and Officer Blagg's safety. As a result, Chaidez' statements related to his possession of and the location of the firearm are admissible under the public safety exception.

**II.B. The Defendant also consented to the search of his truck which resulted in the seizure of the physical evidence.**

Chaidez argued the gun was seized "without a warrant, probable cause, consent, or other excuse and was from an area in which he had a reasonable expectation of privacy." (Doc. 23 at 1; Doc. 26 at 1.) He also claimed "[t]here was no credible evidence to believe [ ] Chaidez' constitutional rights were not violated by searching his vehicle without consent, or that any other warrantless search exception applied." (Doc. 32 at 1.)

Law enforcement may search a motor vehicle, even in the absence of a warrant or probable cause, if a person authorized to give consent does so. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973). Such consent is an exception to the Fourth Amendment's warrant requirement. *Id.*

The Court considers the totality of the circumstances in determining whether consent is voluntary. *United States v. Gipp,* 147 F.3d 680, 685 (8th Cir. 1998). The burden of proving by a preponderance of the evidence that a search is consensual falls on the Government. *United States v. Cedano–Medina,* 366 F.3d 682, 684 (8th Cir. 2004). In determining whether a suspect has voluntarily given consent, the Court considers various factors, including:

> personal characteristics of the defendant, such as age, education, intelligence,

sobriety, and experience with the law; and features of the context in which the consent was given, such as the length of detention or questioning, the substance of any discussion between the defendant and police preceding the consent, whether the defendant was free to leave or was subject to restraint, and whether the defendant's contemporaneous reaction to the search was consistent with consent.

*United States v. Jones,* 254 F.3d 692, 696 (8th Cir. 2001) (citing *United States v. Hathcock,* 103 F.3d 715, 719–20 (8th Cir. 1997)).

The question of voluntariness does not depend exclusively on whether law enforcement advised a suspect that he could withhold his consent. *Ohio v. Robinette,* 519 U.S. 33, 39–40 (1996) (citation omitted.) ("[S]o too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary."); *Schneckloth,* 412 U.S. at 227 ("[T]he government need not establish such knowledge as the *sine qua non* of an effective consent."); *see also United States v. Drayton,* 536 U.S. 194, 206 (2002) (acknowledging that the Supreme Court "has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search."). Nor is law enforcement categorically obligated to provide a suspect with a consent-to-search form. *See Siwek,* 453 F.3d at 1084 (citing *United States v. Carrate,* 122 F.3d 666, 670 (8th Cir. 1997)).

Furthermore, as noted by the Government, some cooperative actions may "evince[] voluntariness." (Doc. 25 at 7.) *See United States v. Chaidez*, 906 F.2d 377, 382 (8th Cir. 1990) (defendant's action of opening the trunk for the officer to examine supports conclusion that defendant voluntarily consented to the search of the trunk). In

this case, after stating the gun was in the truck, Chaidez voluntarily exited the apartment, walked to his truck, and opened the truck door. When Officer Blagg asked Chaidez to allow him to retrieve the gun, Chaidez backed away from the truck and told Officer Blagg where the gun was located. Both Chaidez' physical and verbal reactions to Officer Blagg's request to secure the gun evinced voluntariness of consent.

The paramount inquiry in determining whether consent is freely and voluntarily given is "whether, in light of the totality of the circumstances, consent was given without coercion, express or implied." *United States v. Sanders,* 424 F.3d 768, 773 (8th Cir. 2005) (citing *Schneckloth,* 412 U.S. at 227)).

The Court has carefully considered Officer Blagg's testimony regarding Chaidez voluntarily sharing that he had a gun in his truck and his unrestrained actions associated with assisting Officer Blagg in retrieving the gun. Chaidez walked out of the apartment of his own free will, opened the door of the truck by himself, and started reaching for the center console before Officer Blagg asked Chaidez, "please stop and allow me to retrieve it for my safety." (Doc. 28, *see* FTR Gold at 11:18:00.) Chaidez did not object to Officer Blagg's request rather he stepped away from the truck and allowed Officer Blagg to retrieve it. Chaidez' movement was not restrained in any way. He was not threatened by Officer Blagg. Even after the firearm was retrieved, Officer Blagg advised Chaidez and his wife of the need for the pair to follow the "12 hour rule," and Chaidez volunteered to leave. These circumstances support that Chaidez consented to the search of his truck.

Even if Chaidez had not consented to Officer Blagg's request to retrieve the firearm, Officer Blagg could have searched the truck pursuant to the automobile exception to the warrant requirement. Police may search an automobile or other vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband or evidence. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970); *Carroll v. United States*, 267 U.S. 132, 162 (1925). As the Government stated, "Officer Blagg had probable cause to believe that Chaidez may have committed a crime under Missouri law with a weapon" (Doc. 25 at 7) and Chaidez stated that a firearm was in his truck. That information was sufficient to constitute probable cause that Chaidez' truck contained evidence of a crime.

Therefore, the firearm and any other physical evidence that was seized should not be suppressed.

### III. Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Chaidez' Motion to Suppress Physical Evidence and Statements (Docs. 23 and 26) be **denied**.

Further, the parties are advised that they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

s/Abbie Crites-Leoni<br>United States Magistrate Judge

Dated this 2nd day of August, 2016